UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

06 Civ.2376

_____

**SUZANNE GLASER**,

Plaintiff,

-against-

**PRUDENTIAL INSURANCE COMPANY OF
AMERICA,  A.A.A.A. BENEFITS, INC.,
A.A.A.A. GROUP INSURANCE TRUST and
BERNARD HODES GROUP, INC.**,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS AND IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR SUMMARY JUDGEMENT
(as corrected 10/2/06)**

**KOOB & MAGOOLAGHAN**
Attorneys at Law
_Attorneys for Plaintiff_
19 Fulton Street - Suite 408
New York, New York 10038
(212) 406-3095

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT I:      DEFENDANTS' MOTION FOR JUDGMENT
              ON THE PLEADINGS SHOULD BE DISMISSED
              AND NOT CONVERTED TO A RULE 56 MOTION . . . . . . . . . . . . . 9

              A.  The Standard for Dismissal on the Pleadings under
                  Fed. R. Civ.P.12(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

              B.  Conversion to Rule 56 Is Inappropriate . . . . . . . . . . . . . . . . . . . . 10

POINT II:     DEFENDANTS' MOTION TO LIMIT THE
              COURT'S REVIEW TO THE INSURER'S OWN
              DOCUMENTS SHOULD  BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT III:    THE COURT SHOULD CONSIDER PLAINTIFF'S
              CLAIMS DE NOVO AND WITHOUT DEFERENCE TO
              PRUDENTIAL'S REVIEWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

              A.  Defendant's erroneous reliance upon "when Prudential
                  determines" or  "as determined by Prudential" . . . . . . . . . . . . . . . 18

              B.  Defendant's erroneous reliance upon "Proof Satisfactory
                  to Prudential"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

POINT IV:     DISPUTED ISSUES OF MATERIAL FACTS PRECLUDE
              GRANTING SUMMARY JUDGMENT TO DEFENDANTS
              ON PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS . . . . . . . . 21

              A.  The Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . 21

              B.  Relevant Burdens of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

              C.  The De Novo Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . 23

              D.  Defendants Have Not Complied with Rule 56 . . . . . . . . . . . . . . .  23

              E.  Plaintiff is Entitled to Discovery . . . . . . . . . . . . . . . . . . . . . . . . . 27

              F.  Questions of Fact Preclude Summary Judgment for Defendant . . . . . 29

POINT V:      PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT  . . . . . . . . 30

              A.  Plaintiff is entitled to continued benefits . . . . . . . . . . . . . . . . . . . 31

              B.  Defendant cannot meet its burden of proving either policy

limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

C.  Plaintiff's claim is not limited by the subjective reporting
limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

D.  There is no reliable evidence to support the application of
the mental illness limitation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

POINT VI:    SUMMARY JUDGMENT SHOULD BE GRANTED
PLAINTIFF ON HER CLAIM OF UNDERPAYMENT . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                                                  <u>**Page**</u>

<u>Abatie v. Alta  Health & Life Ins. Co.</u>, 2006 U.S.App. LEXIS 20829
(9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Allison v. Unum Life Ins. Co.</u>, 2005 WL 1457636 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . 14

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21,34

<u>Arthurs v. Metropolitan Life Ins. Co.</u>, 760 F. Supp. 1095 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . 16

<u>Bedrick v. Travelers Insur. Co.</u>, 93 F.3d 149 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Bernheim v. Litt</u>, 79 F.3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822 (2003) . . . . . . . . . . . . . . . . . . . . . . . 28,30

<u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Buchanan v. Aetna Life Ins. Co.</u>, 2006 WL 1208069 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 15

<u>Burnette v. Carothers</u>, 192 F.3d 52 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Calvet v. Firstar Finance, Inc.</u>, 409 F.3d 286 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Campbell v. Unum Life Ins. Co.</u>, 2004 WL 1497712 (E.D.La. 2004) . . . . . . . . . . . . . . . . . . . . 39

<u>Capobianco v. City of New York</u>, 422 F.3d 47 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Chambers v. Time Warner</u>, Inc., 282 F.3d 147 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Cosmas v. Hassett</u>, 886 F.2d 8 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . 24,27

<u>DeFelice v. Am. Int'l. Life Assurance Co.</u>, 112 F.3d 61 (2d Cir. 1997) . . . . . . . . . . . . . . . 12,13

<u>Diaz v. Prudential Ins. Co. of Am.</u>, 424 F.3d 635 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 21

<u>Elsroth v. Consolidated Edison Co. of New York</u>, 10 F. Supp. 2d 427 (S.D.N.Y. 1998) . . . . . . 23

<u>Employers Ins. of Wausau v. Duplan Corp.</u>, 899 F. Supp. 1112 (S.D.N.Y. 1995) . . . . . . . . . . 22

<u>Farley v. Arkansas Blue Cross & Blue Shield</u>, 147 F.3d 774 (8th Cir. 1998) . . . . . . . . . . . . . . 15

i

Farr Man Coffee Inc. v. Chester, 1993 WL 248799 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . 23

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 12,16

Flores v. Prudential Ins. Co. of America, 2004 WL 2075448 (N.D.Cal. 2004) . . . . . . . . . 20,21

Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264 (4th Cir. 2002) . . . . . . . . . . . . . . 37

George v. Unum Life Ins. Co., 1996 WL 701018 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . 39

Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14 (2d Cir.1995) . . . . . . . . . . . . . . 21

Herzberger v. Standard Ins. Co., 205 F.3d 332 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 20,21

Heublein, Inc. v. United States, 996 F.2d 1455 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 31

Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . 23

International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322 (1974) . . . . . . . . . . . . . . . 22

Isaacs v. Mid America Body & Equipment Co., 720 F. Supp. 255 (E.D.N.Y.1989) . . . . . . . . . 24

I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Engs. Council Ins. Trust Fund, 136 F.3d 114 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Kergosien v. Ocean Energy, Inc., 390 F.3d 346 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 15

King v. American Airlines, Inc., 284 F.3d 352 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243 (2d Cir. 1999) . . . 16,18,19,21,23

Klein v. National Life of Vermont, 7 F. Supp. 2d 223 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . 39

Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706 (2d Cir. 2001) . . . . . . . . . . . . . . 18

Lifson v. INA Life Ins. Co. of New York, 333 F.3d 349 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . 37

Lijoi v. Continental, 414 F. Supp. 2d 228 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19 (1st Cir. 2003) . . . . . . . . . . . . . . . 15

Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004) . . . . . . . . . . . . . 12,13,23,29

Luby v. Teamsters Health, Welfare and Pension Trust Funds, 944 F.2d 1176 (3d Cir. 1991) . . 16

M.H. Lipiner & Son, Inc. v. Hanover Ins. Co., 869 F.2d 685 (2d Cir. 1989) . . . . . . . . . . . . . . 22

MacMillan v. Provident Mutual Life Ins. Co. of Philadelphia, 32 F. Supp. 2d 600 (W.D.N.Y.

1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98
(2d Cir. 1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,23,37

Miller v. United Welfare Fund, 72 F.3d 1066 (2d Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . 14

Mitchell v. Prudential Health Care Plan, 2002 WL 1284947 (D. Del. 2002)  . . . . . . . . . . . . . . 25

Mood v. Prudential, 379 F. Supp. 2d  267 (E.D.N.Y. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . 19

Moon v. American Home Assur. Co., 888 F.2d 86 (11th Cir. 1989)  . . . . . . . . . . . . . . . . . . . . 16

Muller v. First Unum Life Insurance Co., 341 F.3d 119 (2d Cir. 2003)  . . . . . . . . . . . . . . . . . . 10

Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000)  . . . . . . . . . . . . . . 15

Neuman v. Prudential, 367 F. Supp.  2d 969 (E.D.Va. 2005)  . . . . . . . . . . . . . . . . . . . . . . . 20,25

Nichols v. Prudential Ins. Co. of America, 406 F. 3d 98 (2d Cir. 2005)  . . . . . . . . . . . . . . . 19,21

O'Sullivan v. Prudential Ins. Co. of America, 2001 WL 727033 (S.D.N.Y. 2001)  . . . . . . . . . 19

Paese v. Hartford Life and Accident Ins. Co., 2004 U.S. Dist. LEXIS 6040
(S.D.N.Y. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Palmiotti v. Metropolitan Life Ins. Co., 2005 U.S. Dist. LEXIS 3626 (S.D.N.Y. 2005)  . . . . . . 29

Perez v. Aetna Life Ins. Co., 150 F.3d 550 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Pinto v. Reliance Standard Life Insur. Co., 214 F.3d 377 (3d Cir. 2000)  . . . . . . . . . . . . . . . . 15

Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975
(7th Cir. 1999)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017 (4th Cir. 1993) . . . . . . . . . . . . 14

Raskin v. The Wyatt Company, 125 F.3d 55 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Richardson v. Perales, 402 U.S. 389 (1971)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Rock v. Arkansas, 483 U.S. 44 (1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Rubio v. Chock Full O'Nuts Corp., 254 F. Supp. 2d 413 (S.D.N.Y. 2003)  . . . . . . . . . . . . . . . 16

Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . 37

Samedy v. First UNUM Life Ins. Co. of America, 2006 WL 624889

(E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Schwabenbauer v. Board of Education, 667 F.2d 305 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . 31

Schwartz v. Prudential Insurance Co., 450 F.3d 697 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . 20

Seaboard Surety Co. v. The Gillette Co., 64 N.Y.2d 304 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 38

Sheehan v. Metropolitan Life Ins. Co., 368 F. Supp. 2d 228 (S.D.N.Y. 2005) . . . . . . . . . 14,25,35

Sheehan v. Metropolitan Life Ins. Co., 2002 WL 1424592 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . 15

Sheppard v. Beerman, 18 F.3d 147 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Simone v. Prudential Ins. Co. of America, 2005 WL 475406 (S.D.N.Y. 2005) . . . . . . . . . . . . . 19

Sincoff v. Liberty Mut. Fire Ins. Co., 11 N.Y.2d 386 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Sira v. Morton, 380 F.3d 57 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sutera v. Schering Corp., 73 F.3d 13 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Technicon Elecs. Corp. v. Am. Home Assurance Co., 74 N.Y.2d 66 (1989) . . . . . . . . . . . . . . . 22

Terwilliger v. Terwilliger, 206 F.3d 240 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Tracy v. Pharmacia, Case No. 04-73043 (E.D. Mich.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Troy v. UNUM Life Ins. Co. of Am., 2006 WL 846355 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . 27

Trump v. Refco Properties, Inc., 194 A.D.2d 70 (1st Dep't 1993) . . . . . . . . . . . . . . . . . . . . . . . 37

Urso v. Prudential, 2004 WL 3355265 (D.N.H. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Vargas v. Ins. Co. of N. Am., 651 F.2d 838 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Wagner v. First Unum Life Ins. Co., 100 Fed. Appx. 862 (2d Cir. 2004) . . . . . . . . . . . . . . . . . 15

Weissman v. First UNUM Life Ins. Co., 44 F. Supp. 2d 512 (S.D.N.Y. 1999) . . . . . . . . . . . . . 15

Westphal v. Eastman Kodak Co., 2006 WL 1720380 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . 35,36

Wildbur v. ARCO Chemical Co., 974 F.2d 631 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wood v. Xerox Corp. Long-Term Disability Income Plan, 2006 WL 798969
(N.D.Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Zervos v. Verizon New York, Inc., 252 F.3d 163 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 14

iv

## STATUTES and REGULATIONS

Employees Retirement Income Security Act of 1974, 29 U.S.C. §1000 et seq. . . . . . . . . . . . . . . .

Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,9-12.21.23,24

Federal Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,24,25,35

Social Security Act, 42 U.S.C. §§ 423(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

20 C.F.R. §§ 404.1520. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

29 C.F.R. §2560.503-1 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1 ERISA Leg. History 604, S. Rep No. 93-127, 93d Cong., 1st Sess. 18 (1973),
  reprinted in 1974 US Code Cong. & Admin. News 4838, 4854 . . . . . . . . . . . . . . . . . . . . . . . 37

## OTHER AUTHORITIES

American Psychiatric Association's Diagnostic and Statistical Manual
 of Mental Disorders (DSMIV) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

APA Monitor on Psychology, Vol. 36, No.1, January 2005, "Diagnoses, record reviews
 and the new Ethics Code" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States Department of Labor, Employment & Training Admin.,
 II Dictionary of Occupational Titles (DOT), 1013 (4th ed.1991) . . . . . . . . . . . . . . . . . . . . . . . 26

United States Department of Labor's Standard Occupational Classification
 (SOC) system, Occupational Information Network (O*NET) . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States National Institute of Health Medical Ency.
 http://www.nlm.nih.gov/medlineplus/ency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

10A Charles Alan Wright et al., Federal Practice & Procedure § 2722, at 384-85 (3d ed. 1998) 30

## PRELIMINARY STATEMENT

In this action brought under the Employees Retirement Income Security Act of 1974, 29 U.S.C. §1000 et seq. ("ERISA") plaintiff Suzanne Glaser seeks enforcement of her rights under a group long term disability benefits plan ("the Plan") sponsored by her employer, defendant Bernard Hodes ("employer"), an advertising company. Specifically, Ms. Glaser complains that defendant Prudential Insurance Company of America ("Prudential"), the benefits provider for the Plan, wrongfully terminated her disability benefits after 24 months of coverage, and underpaid the benefits that were provided. She additionally seeks penalties against her employer and the named Plan Administrator, defendants A.A.A.A. Group Insurance Trust and its subsidiary A.A.A.A. Benefits, Inc. (jointly "A.A.A.A.") for a failure to provide requested plan documents.[1]

This memorandum is submitted in opposition to the motion made by defendants Prudential and A.A.A.A. (hereinafter "the defendants") for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c)[2], and to oppose defendants' contentions that the Court must apply an abuse of discretion standard and limit its review to the documents contained in defendant Prudential's claim file. Defendants' argument for summary dismissal presumes the Court's adoption of the contended limitations on its review, and the Court's blanket deference to the

---

[1] Defendants argue that plaintiff''s claims against Prudential, but not A.A.A.A., for failure to provide requested plan documents, should be dismissed because A.A.A.A. is the "plan administrator," not Prudential. (Defs. Mem. 24-25.) Plaintiff agrees that whichever entity is designated the "plan administrator" by the Plan documents is liable under 29 U.S.C. §§ 1002(16)(A), for failing to provide requested documents. Plaintiff therefore accepts defense counsel''s representation that, for the purposes of this case, A.A.A.A. is the entity which may be held liable under ERISA for the failure to provide Plan documents.

[2] Defendants also submitted a Rule 56.1 statement "in case this Court chooses to treat this motion as one for summary judgment." Plaintiff submits that the conversion of the motion is inappropriate and premature, as it obviates her rights to discovery under the Federal Rules of Civil Procedure. Further, as plaintiff's response shows, there are disputed material facts which preclude summary judgment for defendants.

1

conclusions of Prudential claims reviewers.  Thus defendants argue that Prudential's decision to terminate benefits was "reasonable, supported by substantial evidence, and not arbitrary and capricious."[3]  (Def.  Memo. at 1, 7, 14)   Plaintiff submits that defendants are not entitled to dismissal of plaintiff's claims on summary judgment for several reasons: they use the wrong standard, the complaint states a viable cause of action, and material facts supporting defendants' position are in genuine dispute.[4]  Rather, plaintiff is entitled to summary judgment because she has shown, as a matter of law, that defendants have no viable basis for refusing to continue plaintiff's payments and that her benefits were underpaid.

## STATEMENT OF FACTS

Susanne Glaser is a thirty-nine year old college educated woman who was first diagnosed with Chronic Fatigue Syndrome ("CFS") and Fibromyalgia in 1995 while employed as an "Account Executive" by defendant Bernard Hodes. Complaint ¶¶10-11. Earning $44,000 per annum, Ms. Glaser was required to work long hours, regularly meet deadlines, interact with customers and with other departments in the company, stand for prolonged periods, coordinate a multitude of detailed information, travel weekly for day trips to visit customers at their offices, and travel by car for up to two hours for such visits. Id. ¶12.

In early 2000, Plaintiff experienced an increase in the physical symptoms of CFS and Fibromyalgia which made it difficult for her to perform the duties of her occupation on a full

---

[3]Although not identified as such, defendants' Point III argument appears to seek a ruling from the Court under Fed. R. Civ. P. 52, rather than Rule 56.  The question of whether any dispute lies concerning material facts is simply not addressed.

[4]Defendants do not claim discretionary authority in defending Ms. Glaser's claim of benefit underpayment, but instead argue that the calculation of benefits was proper, "based upon the plain meaning of the plan." (Def. Memo. at pp. 23-24) Plaintiff disputes defendants' interpretation of the Plan but agrees that this issue is subject to resolution on summary judgment. See Point V below.

time basis.  Id. ¶15. On the advice of Dr. Susan Levine, a medical doctor Board Certified in

Infectious Diseases and Internal Medicine and Ms. Glaser's treating physician, Ms. Glaser

requested and her employer agreed to reduce her work schedule from 5 to 4 days per week.  Id.

¶¶14;16. Upon the adjustment of her schedule on February 2, 2000, Ms. Glaser's salary rate was

adjusted to $35,200 reflecting a 20% decrease in pay.  Id. ¶16; PRU 0503[5].  As her condition

continued to deteriorate, Ms. Glaser was rendered unable to work even on a part-time basis, and

as of May 30, 2000, she was placed on a short term medical leave due to the exacerbation of her

symptoms of CFS.  Complaint ¶¶17-18.  While on leave, Ms. Glaser received short term

disability benefits, and when those benefits expired, Ms. Glaser applied for long term disability

benefits under the Bernard Hodes Insurance Plan.  Id. ¶¶19-20; PRU 0424.  In support of Ms.

Glaser's application for long term disability benefits Dr. Levine reported that her condition had

progressed such that she suffered from severe debilitating fatigue, sleep disturbances, muscle

pains, sensitivities to light and noise, lengthy post-exertional malaise following even minimal

activity, difficulty concentrating, short term memory difficulties, light headedness, dizziness,

joint stiffness, low grade fevers, sore throat and swollen glands, and urinary frequency.  Id. ¶21.

After Ms. Glaser's application for long term disability benefits was denied, she retained

counsel to challenge that determination. Complaint ¶22.  During the appeal process, additional

reports were submitted on Ms. Glaser's behalf, including reports from Dr. Levine, PRU 0583-

0585, a letter report addressed to the Social Security Administration from Sheldon Feuerstadt,

Ph. D., PRU 0568-0574 and a report by Leo J. Shea, III, Ph. D, clinical psychologist and neuro-

psychologist, of a neuropsychological test performed on Plaintiff which confirmed her reported

cognitive deficits. PRU 0559-0567; Complaint ¶26.        At Prudential's request, Ms. Glaser

---

[5]PRU references pages from the Prudential claim file as they are numbered in Def. Ex. A.

was examined by Glenn Hammer, M.D.  Upon his examination Dr. Hammer concurred with Ms.

Glaser's doctors and concluded that Plaintiff was disabled and suffered from CFS.

Simultaneously Dr. Hammer stated a *belief* that Plaintiff's anxiety and depression contributed to

her disability and were not secondary symptoms.  Id. ¶27; PRU 0759-0760.  Thereafter, by letter

dated July 20, 2001, Ms. Glaser was advised that the denial of benefits decision was overturned

because the medical documentation evidences that "Ms. Glaser has remained unable to perform

the duties of her occupation."  Complaint ¶28.  In determining the amount to which Ms. Glaser

was entitled to benefits, however, Prudential incorrectly based the benefits calculation upon her

4/5ths reduced annual salary, which calculation is without support in the Plan.  Id. ¶¶29-30.

By letter dated September 16, 2002,  postmarked November 26, 2002, and received on

December 3, 2002, Prudential advised Ms. Glaser that her benefits were terminated as of

November 25, 2002, because Prudential determined that her claim was limited to a 24 month

payment period under the policy's limitations for "self reported symptoms" and "mental illness."

Id. ¶33; PRU 0143-0145.  The more than two month late mailing of the September 16 notice

deprived Plaintiff of an opportunity to protest the decision prior to the termination of benefits.

Nor did the letter provide sufficient explanation of the reasons for the decision or identify the

evidence relied upon by the reviewer.  It also gave no timetable for its review of any appeal that

Ms. Glaser might file.  Id. ¶¶34-35.  To the extent the termination letter purports to support the

decision to terminate Ms. Glaser's benefits, it relies upon three erroneous conclusions not

supported by the record: (a) the letter erroneously states that Plaintiff stopped work due to CFS

*and depression* when there is no record evidence that depression was a role in Plaintiff's decision

to stop work; (b) the letter erroneously concludes that Plaintiff was unable to return to work due

to Chronic Fatigue *and depression* when the documentation clearly confirms that Plaintiff's

4

inability to work was due to the physical manifestations of her illnesses, and that her depression stemmed from her being disabled and did not cause her to be disabled; and (c) the letter states that "*the following diagnosis are subject to the benefit limitation (of 24 months)*" but states no following diagnosis. Moreover, there is no language in the policy identifying any physical illness diagnoses as being automatically subject to the 24 month benefit limitation. Id. ¶36.

Thereafter Ms. Glaser, through counsel, protested the late mailing of the notice and requested the complete claim file and copies of all relevant appeal protocols. Id. ¶37; PRU 0575-0582. By counsel's letter dated March 24, 2003, Ms. Glassed appealed the termination of benefits, challenging the basis for the decision and submitting additional documentation of her disability. Id. ¶38. Counsel also noted that Prudential had failed to provide requested copies of any written guidelines or protocols followed in making its determination. Id. Upon a subsequent request from Prudential, Ms. Glaser provided office notes and medical records from her treating physician and physical therapist, and advised that the Social Security Administration had determined Plaintiff's disability to be continuing. Id. ¶39. There is no medical evidence in the record that Plaintiff's condition has improved from what it was at the time of Prudential's acceptance of the claim such that Ms. Glaser could now perform the duties of her occupation. By letter dated June 25, 2003, Prudential conceded that Ms. Glaser discontinued work due to CFS, omitting its earlier reference to depression as a cause, but nevertheless upheld their termination of benefits, finding that "the Benefit Limitations pertaining to psychiatric disorders and self-reported symptoms are applicable to Ms. Glaser's claim." Id. ¶40. In articulating the basis for its determination Prudential noted, for the first time, that its determination was based upon its finding that the medical documentation did not support a finding of physical illness which would prevent Ms. Glaser from performing the duties of her own occupation. Id.; PRU 0133-0136.

5

Prudential's determination on appeal that the mental illness limitation applied to Ms. Glaser's claim was based upon an inconclusive report after a paper review by a psychiatrist, Dr. Marcia Scott, and the general conclusions by infectious disease specialist Dr. Hammer.  Complaint ¶¶41-42; PRU 0235;0759-0760.  In reaching that determination Prudential ignored the substantial, undisputed, objective medical evidence documenting Plaintiff's physical illnesses, and merely reiterated its application of the self-reported symptom limitation.  Additional weight was given to the reviewer's non-medical opinion that Plaintiff's practice of yoga is "not consistent with Disability".  Complaint ¶¶43-44.

In affirming the decision to terminate Ms. Glaser's benefits, the Prudential reviewer also applied an inappropriate standard as to the proof needed to show a continuation of disability, incorrectly applied standards attendant to  "sedentary" occupations, and erroneously relied upon an incorrect definition of disability.  Id. ¶¶45-46.  In affirming the determination to terminate Ms. Glaser's benefits, the Prudential reviewer ignored completely Ms. Glaser's symptoms of severe debilitating fatigue, cognitive difficulties and other numerous symptoms, giving no consideration to how these symptoms would necessarily impair her job performance as an Account Executive at a major advertising agency, disregarding even their own reviewer Dr. Scott's finding that the records show Plaintiff suffers from "distractability and low energy" and Dr. Hammer's acceptance of Dr. Shea's findings of "significant" cognitive impairments.  Id. ¶52.

Prudential's letter affirming the termination of her benefits provided that Plaintiff *may* submit further information and file a second appeal, stating no time limits.  Id. ¶53.  Ms. Glaser submitted a second appeal to Prudential by counsel's letter dated March 18, 2004, including further documentation of her disabling physical symptoms as reported by various health providers, and additional verification that her disability was not caused by any "mental illness."

Included among other documents submitted were an updated report from her treating physician

Dr. Levine, a consultation report after examination by Benjamin Natelson, M.D. and Professor of

Neurosciences at New Jersey Medical School, and a report after examination by Ms. Glaser's

former psychotherapist, Sheldon Feuerstadt, Ph. D.  Id. ¶54; PRU 0448-0481.

By letter dated July 23, 2004, written more than 120 days after Plaintiff submitted her

March 18, 2004 second appeal, Prudential advised that it was "unable to make a determination

on the claim at this time" and that, now almost two full years after terminating her benefits, was

in the process of arranging an unspecified "Independent Medical Examination" of Plaintiff.

Complaint ¶56; PRU 0127.  Prudential alleges by letter dated September 1, 2004, that it sent a

letter on August 5, 2004 notifying Plaintiff of an appointment scheduled for August 16th with a

neuropsychologist, Dr. VanGorp.  Id. ¶58.  The letter further advised of a new appointment

scheduled at 9:00 A.M. for September 19, 2004.  Id. Ms. Glaser did not attend the August 16th

appointment as she had not received any notice.  Id. ¶59. When Plaintiff's counsel was informed

that the proposed examination was to entail a full day of neuropsychological testing, counsel

advised Prudential that Plaintiff could not attend a full day of testing because of her medical

condition. Although counsel offered to speak to Dr. VanGorp to make other arrangements, and

the doctor offered to extend the testing over a two day period, Prudential decided to forego the

request for the examination and instead requested a file review by Dr. VanGorp.  Id.

By letter dated September 29, 2004, Prudential notified Plaintiff that her second appeal

was denied, essentially repeating the explanations set forth in its denial of Plaintiff's first appeal,

without addressing Plaintiff's new evidence or appeal arguments.  Id. ¶60. Prudential

acknowledged that Dr. VanGorp found no evidence that Plaintiff had exaggerated her symptoms,

and that the evidence did support some areas of cognitive weaknesses.  Id. Prudential relied on

Dr. VanGorp's finding that the neuropsychological test performed by Dr. Shea did not

substantiate a disabling cognitive disorder, even though Plaintiff only raised her cognition

difficulties as contributing to her disability but never as the primary symptom. More revealing is

that Prudential completely ignored his statement that physical issues such as fatigue and other

physical limitations may be causing what Plaintiff described as "brain fog" and may affect her

ability to work.  Prudential offered Plaintiff an opportunity for a third appeal, again without

setting any time frame for such process.  Id.; PRU 0113-0116.  Ms. Glaser declined to proceed

with yet another appeal, and asserts here that the review process employed by Prudential,

including but not limited to its reliance on incorrect or unsubstantiated conclusions, its ever-

changing reasoning for the denial, and its unfair interpretation of vague policy terms, show bad

faith in its review of her claim.  Complaint ¶61-63. Plaintiff additionally asserts that Prudential

knowingly and willfully violated its fiduciary and contractual obligations under the subject Policy

and/or Plan by (a)  wrongfully denying benefits; (b) changing the basis for its denial with each

review; (c) cherry picking information from the medical evidence; (d) ignoring without good

reason the reports of treating physicians; (e) ignoring time periods in deciding appeals; (f)

withholding information requested by claimant; (g) arbitrarily interpreting vague contract terms

in the insurer's favor; (h) neglecting to explain the basis for its decisions; (i) neglecting to inform

claimant as to what information was needed to satisfy the requirements for coverage; (j) ignoring

information in the file concerning the job requirements and applying an incorrect definition of

disability; (k) failing to consider all available information supporting the claim; (l) denying

Plaintiff's claim without a reasonable and adequate investigation based upon all available

information; (m) compelling Plaintiff to institute litigation to recover amounts due her under the

Plan; (n) failing to follow written protocols in making determinations on disability claims; and

(o) otherwise failing to perform its obligations under law and under the express terms of the Plan. Id. ¶¶63-76.  As to defendant's ongoing failure and refusal to produce copies of Plan documents, Ms. Glaser asserts that penalties should be assesses for each day of the violation.  Id. ¶77.

**POINT I**

**DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS SHOULD BE DISMISSED
AND NOT CONVERTED TO A RULE 56 MOTION**

Defendants' motion to dismiss is confused by defendants' erroneous contentions regarding the applicable standard of review and evidentiary rules which are applicable to all civil actions.  The Court should deny defendants' Rule 12(c) motion because the complaint sufficiently alleges a cause of action for denied benefits, regardless of whether the claim is afforded de novo or discretionary review.

**A.  The Standard for Dismissal on the Pleadings under Fed. R. Civ. P. 12(c)**

A motion for judgment on the pleadings is governed by the same standards that apply to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  King v. American Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002).  Therefore, all of the allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in plaintiff's favor. Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  A complaint may not be dismissed under Rule 12(c) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

A court may, without converting the motion into one for summary judgment, consider documents that are attached to, incorporated by reference in, or integral to the complaint; and it may also consider matters that are subject to judicial notice.  See Chambers v. Time Warner, Inc.,

9

282 F.3d 147, 152-53 (2d Cir. 2002); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.

1993).  However, a limited quotation from or reference to documents that may constitute relevant

evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.

See Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989) (rejecting argument that short quotations

from an annual report and 10K statement incorporated those documents into the complaint); see

also Sira v. Morton, 380 F.3d 57 (2d Cir. 2004) (finding the transcripts from the prisoner's

challenged disciplinary proceeding not part of the complaint on a Rule 12(c) motion).

## B.  Conversion to Rule 56 Is Inappropriate

In a bald attempt to circumvent plaintiff's rights under ERISA, Prudential moves to

dismiss the complaint based upon plaintiff's claim file, which contains approximately 700 more

pages of documents than those attached or referenced in the complaint.  See Complaint and its six

attachments.  Within those additional 700 pages defendants cite to documents that contain highly

suspect opinions and conclusions of employees and/or agents of Prudential rendered outside their

area of expertise and/or based upon a limited paper review of the record, which plaintiff has yet

had the opportunity to challenge as unreliable and untrustworthy.

When extrinsic evidence is submitted along with a Rule 12(c) motion, the Court may

either refuse to consider that evidence and limit itself to the pleadings, deny it and proceed

towards trial, or consider the motion as arising under Rule 56.  Muller v. First Unum Life

Insurance Co., 341 F.3d 119, 124-25 (2d Cir. 2003).  If the evidence "outside" the pleadings  is

not excluded, the Court must convert a motion for judgment on the pleadings to one for summary

judgment.  Fed. R. Civ. P. 12(c).  The rule further provides that when a court converts a motion

for judgment on the pleadings into one for summary judgment, it shall provide "all parties . . . a

reasonable opportunity to present all material made pertinent to such a motion."  Id.  The "issue is

not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted).

Plaintiff submits that as the admissibility, reliability and/or relevance of a large portion of the defendant Prudential's claim file are highly contested, defendant's motion to dismiss must be resolved solely on the pleadings and be denied.  Furthermore, as argued below, a litigant's right to discovery should not be abrogated where, as here, a fiduciary relies upon the unchallenged conclusions of physicians practicing below accepted standards and/or outside their area of expertise and/or who individually and collectively failed to consider the volume of medical evidence produced by a claimant which fully supports her claim for disability insurance benefits. Under such circumstances, the conversion of defendant's motion to one for summary judgment would conflict with basic principles of due process and the Federal Rules of Civil Procedure, and result in grave prejudice to plaintiff's prosecution of her claim.

## POINT II

### DEFENDANTS' MOTION TO LIMIT THE
### THE COURTS REVIEW TO THE INSURER'S
### OWN DOCUMENTS  SHOULD  BE DENIED

There is no authority in ERISA or the Federal Rules to limit the Article III powers of a district court in adjudicating a civil action brought pursuant to ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to a review of the record created and maintained by the insurance company. Nor is there support in the ERISA legislative background or in Supreme Court precedent for such a restriction on ERISA litigation. To the contrary, a stated policy of the ERISA law is to provide ready access to the federal courts. 29 U.S.C. § 1001(b).  Indeed, Congress created a civil action for plan participants with the intent that the law not afford  "less protection to employees and

11

their beneficiaries than they enjoyed before ERISA was enacted." <u>Firestone Tire & Rubber Co. v.</u> <u>Bruch</u>, 489 U.S. 101, 114 (1989).  Although the Court ruled in <u>Firestone</u> that federal courts are to determine employee benefit claims brought under the ERISA law pursuant to a plenary standard of review unless the plan specifies for a more deferential standard, neither that ruling, nor any other Supreme Court decision limits the scope of civil procedures available under ERISA.

Second Circuit analysis of the scope of the record to be considered in ERISA actions differs slightly depending on whether the review is de novo or the more limited arbitrary and capricious standard.  However, under either review standard, defendants' across-the-board objection to any discovery is contrary to both the Federal Rules of Civil Procedure, the Rules of Evidence, and Second Circuit jurisprudence.[6]  Here, where the de novo standard applies (<u>see</u> Point III below), district courts have the discretion to rely on evidence beyond the insurer's record to determine whether the plaintiff qualifies for benefits.  <u>See</u> <u>Masella v. Blue Cross & Blue</u> <u>Shield of Connecticut, Inc.</u>, 936 F.2d 98, 103-05 (2d Cir. 1991) (a district court may consider evidence outside the administrative record upon a de novo review of issues of plan interpretation); <u>DeFelice v. Am. Int'l. Life Assurance Co.</u>, 112 F.3d 61 (2d Cir. 1997) and <u>Locher</u> <u>v. Unum Life Ins. Co. of Am.</u>, 389 F.3d 288, 296 (2d Cir. 2004).  In <u>DeFelice</u> the Second Circuit expanded its earlier ruling in <u>Masella</u> on the district court's right to consider additional evidence:

> [Where good cause exists] courts must exercise fully their power to review de novo and to be substitute [plan] administrators. Plaintiffs are utterly helpless against the whim of the [administrator's] interpretation of the facts. . . [We hold that] upon de novo review, even purely factual interpretation cases may provide a district court with good cause to admit evidence not available at the administrative level if the administrator was not disinterested.  In this situation, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case.

---

[6] Therefore, Fed. R. Civ. P. 26 applies in full to ERISA actions.

12

112 F.3d at 66 (emphasis in original).  In <u>DeFelice</u>, a conflict of interest, due to one entity acting as both claims reviewer and claims payor, was found to be an example of "good cause" for allowing additional evidence.  <u>Id.</u> at 67.

In <u>Locher v. Unum Life Ins. Co. of Am.</u>, 389 F.3d 288 (2d Cir. 2004) the Second Circuit affirmed the district court's finding of good cause where the administrator failed to maintain sufficient written procedures for initial and appellate review of claims.  Such a procedural deficiency creates "opportunities for conflicts of interests to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator."  <u>Id.</u> at 295, 296.[7]  The Court further noted that once a district court properly rules to consider evidence outside the administrators' record, it "may render a determination on a claim without deferring to an administrator's evaluation of the evidence." <u>Id.</u> at 296.  While <u>Locher</u> cautioned that "[a] conflicted administrator does not per se constitute good cause," <u>Id.</u>, it nevertheless re-affirmed <u>DeFelice,</u> noting that the Court in <u>DeFelice</u> had found, in addition to conflict of interest, problems with the plan administrator's appeals process, including the fact that the appeals committee was comprised entirely of employees of the administrator, that there existed no established criteria for determining an appeal, and that the appeals committee appeared to routinely destroy or discard all records within minutes of hearing an appeal, <u>Id.</u> at 293-95.[8]

---

[7]In <u>Locher</u>, the lower court  admitted the testimony of Dr. Podell, an expert witness retained by the plaintiff, based on good cause and for the purpose of "confirm[ing] the diagnosis of [CFS] and disability as of April 1993, and [finding] credible Locher's account of the progress of her illness." <u>Id.</u> at 292. The Second Circuit affirmed, rejecting UNUM's objection to the testimony as a "reiterat[ion of] its argument that the District Court improperly considered evidence outside of the administrative record."

[8]Other factors that might warrant the introduction of additional evidence include complex medical questions or issues regarding the credibility of medical experts;  the availability of very limited administrative review procedures; the dual role of payor and administrator; the lack of opportunity to counter the administrator's conclusions; and other circumstances where  additional evidence will assist

District Courts have employed the <u>Locher</u> standards in admitting evidence beyond the administrator's file: <u>see</u> <u>Lijoi v. Continental Cas. Co.</u>, 414 F. Supp. 2d 228 (E.D.N.Y. 2006) (finding good cause due to the lack of written protocols for handling and evaluating claims and determining conflicts in medical opinions); <u>Sheehan v. Metropolitan Life Ins. Co.</u>, 368 F. Supp. 2d 228 (S.D.N.Y. 2005) (plaintiff entitled "to present evidence outside the administrator's record on issues of plan interpretation, and, if plaintiff is able to demonstrate a conflict of interest or other good cause, plaintiff will also be entitled to present evidence outside the record on the issue of his physical condition"). Accepting this right to introduce evidence not before the Plan administrator on a showing of good cause, plaintiffs must be given the opportunity to use the tools of discovery in order to make such a showing. <u>See</u> <u>Allison v. Unum Life Ins. Co.</u>, 2005 WL 1457636, *13 (E.D.N.Y. 2005) (permitting discovery on issued related to conflict of interest and procedural matters).

Even where the standard of review is determined to be arbitrary and capricious, plaintiffs have rights to discovery. <u>See</u>, <u>e.g.</u>, <u>Zervos v. Verizon New York, Inc.</u>, 252 F.3d 163, 174 (2d Cir. 2001) (district court is "not . . . confined to the administrative record" on issue of whether "decision to deny . . . coverage request was tinged by a conflict of interest"). In <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1072 (2d Cir. 1995), the Court relied on deposition testimony of the plan's administrator to find that none of the decision makers involved in denying a claimant's request for benefits understood the medical information in the claimant's file, thus leading to a conclusion that the benefit determination was arbitrary and capricious. <u>See</u> <u>also</u> <u>Nagele v. Electronic Data Systems Corp.</u>, 193 F.R.D. 94, 103 (W.D.N.Y. 2000) (pretrial discovery in

---

the court in its rview. <u>See</u> <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1027 (4th Cir. 1993). Here, plaintiff's complaint alleges conflict of interest, bias, and numerous procedural violations sufficient to warrant consideration of evidence beyond the record.

ERISA actions appropriate to assist in evaluating how fiduciary made its decision).

Thus district courts in this Circuit have allowed the reasonable exercise of standard discovery devices available in federal civil practice to challenge decisions by plan fiduciaries for lack of reasonableness, including the absence of substantial evidence. Nagle, 193 F.R.D. at 104; Sheehan v. Metropolitan Life Ins. Co., 2002 WL 1424592, *4 & n.2 (S.D.N.Y. 2002) (allowing discovery on conflict of interest); Wagner v. First Unum Life Ins. Co., 100 Fed. Appx. 862, 864 fn. 1 (2d Cir. 2004) (allowing discovery regarding conflict of interest); Paese v. Hartford Life and Accident Ins. Co., 2004 U.S. Dist. LEXIS 6040, *33 (S.D.N.Y.  2004) (concluding that Hartford failed to engage in a fair and open-minded consideration of plaintiff's claim); Samedy v. First UNUM Life Ins. Co. of America, 2006 WL 624889, *3 (E.D.N.Y. 2006); Weissman v. First UNUM Life Ins. Co., 44 F. Supp. 2d 512, 523 (S.D.N.Y. 1999) (noting  "comprehensive" discovery, and considering the "Supplemental Record.").[9]  Defendants have no basis for resisting

---

[9]The vast majority of other Circuits have allowed discovery, even on a Court's discretionary review. Abatie v. Alta  Health & Life Ins. Co., 2006 U.S.App.LEXIS 20829 (9th Cir. 2006) (en banc) (ruling based on Firestone that claimants have a right to undertake discovery without the need to make a threshold showing of bias); Buchanan v. Aetna Life Ins. Co., 2006 WL 1208069, *8 (6th Cir. 2006) (where there is a "procedural challenge" review is not confined to administrator's record); Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 356 (5th Cir. 2004) ("There is no practical way for the extent of the administrator's conflict of interest to be determined without the arbitrator going beyond the record of the administrator."); Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19 (1st Cir. 2003) (permitting discovery relating to corruption in the claim review process); Pinto v. Reliance Standard Life Insur. Co., 214 F.3d 377 (3d Cir. 2000); Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 982 (7th Cir. 1999) (acknowledging that external evidence may have to be considered to determine whether an administrator conducted a "genuine evaluation" of the record); Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774 (8th Cir. 1998); Bedrick v. Travelers Insur. Co., 93 F.3d 149 (4th Cir. 1996) (discovery revealed the consultants whose opinions were relied on by a medical benefit plan in denying therapy for a child suffering from cerebral palsy lacked adequate qualifications); Wildbur v. ARCO Chemical Co., 974 F.2d 631, 638 (5th Cir. 1992) ("the factual background of the [administrator's] determination and any inferences of a lack of good faith, may, at least on the question of good faith, require the court to review evidence that was not presented to the administrator"); Luby v. Teamsters Health, Welfare and Pension Trust Funds, 944 F.2d 1176, 1183 (3d Cir. 1991) (plan administrators are not "unbiased fact finders like the courts"); Moon v. American Home Assur. Co., 888 F.2d 86 (11th Cir. 1989).

discovery here.

**POINT III**

**THE COURT SHOULD CONSIDER PLAINTIFF'S CLAIMS DE NOVO
AND WITHOUT DEFERENCE TO PRUDENTIAL REVIEWERS**

ERISA actions brought under 29 U.S.C. § 1132(a)(1)(B) are to be reviewed "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) ("Discretionary authority cannot be implied; an administrator has no discretion to determine eligibility or interpret the plan unless the plan language expressly confers such authority on the administrator").  The exception to de novo review is based upon the trust law principle that deference will be given to a fiduciary or to a trustee if explicitly required under the terms of a trust instrument.  Id. at 110, 111. The entity to which the Plan grants discretion may delegate its fiduciary responsibilities, but such delegation must be made "expressly." 29 U.S.C. § 1105(c).[10]

Defendants bear the burden of proof on the issue of the standard of review  "since the party claiming deferential review should prove the predicate that justifies it."  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999) (internal quotation marks omitted).  Moreover, "any ambiguities must be construed against the administrator and in favor of the party seeking judicial review."  Arthurs v. Metropolitan Life Ins. Co., 760 F. Supp. 1095, 1098 (S.D.N.Y. 1991).  Discretion is not found "merely because the administrator has the power to deny a claim."  MacMillan v. Provident Mutual Life Ins. Co. of Philadelphia, 32 F. Supp. 2d 600, 609 (W.D.N.Y. 1999).

---

[10]Prudential cannot by virtue of calling itself a fiduciary assume discretionary authority not formally granted. See  Rubio v. Chock Full O'Nuts Corp., 254 F. Supp. 2d 413 (S.D.N.Y. 2003).

Defendants contend that their decision to terminate plaintiff's disability benefits should receive the Court's deference and be reviewed only for an abuse of discretion under an arbitrary and capricious standard. Their argument primarily rests on the Certificate of Coverage's use of the word "determines" in describing Prudential's role with respect to the provision of long term benefits; additionally, they rely on the use of the phrase "satisfactory to Prudential."[11] Defendant has not shown, nor does the Certificate contain, any of the language traditionally recognized as asserting notice to the beneficiary of the insurer's discretionary authority sufficient to cause a limitation on judicial review.[12]

The Certificate of Coverage, also referred to as the Booklet-Certificate, is by its own definition "a written document prepared by Prudential which tells you: the coverage to which you may be entitled; to whom Prudential will make payment; and the limitations, exclusions and requirements that apply within a plan." PRU 0004-0031. The Certificate also states "The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate." Although plaintiff requested copies of the Plan and any Plan documents, plaintiff has not seen, nor has defendant produced here, a Group Contract or other document executed by the Plan Administrator or Plan Sponsor. Complaint ¶¶22-24.

---

[11]Neither "when Prudential determines" nor "satisfactory to Prudential" is defined in the introductory "Benefit Highlights - Long Term Disability Plan" section nor in the attached Summary Plan Description "provided by your employer" and distributed "on behalf of your Plan Administrator." The word "determines" arises in various provisions of the Certificate-Booklet in response to questions, e.g. "when Prudential determines" is part of the response to the question "How Does Prudential Define Disability?" PRU 0004-0031. The clause "satisfactory to Prudential" is used in the section on Claim Information in describing the proof of continuing disability Prudential may request of a disabled employee in order to continue his or her eligibility for benefits.

[12]The word "discretion" cannot be found in the Certificate, and there is no notice that Prudential's decisions could be subjected to anything less than a full court review.

Even if defendants could show that the Plan reserved discretion, which it has not, the phrases on which Prudential relies are, as a matter of law, insufficient to trigger any standard of review less than de novo.  To determine whether the administrator is conferred discretionary authority, the court is to consider the plain language of the plan documents. "Although a plan need not contain any magic words such as discretion and deference, it must, nevertheless, give some unambiguous indication that discretion has been conferred." Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 739 (2d Cir. 2001) (internal quotation marks and citation omitted).  The Court of Appeals has cautioned that "since clear language can be readily drafted and included in policies . . . when the parties really intend to subject claim denials to judicial review under a deferential standard, courts should require clear language and decline to search in semantic swamps for arguable grants of discretion."  Kinstler, 181 F.3d at 253.

## A.  Defendant's erroneous reliance upon "when Prudential determines" or "as determined by Prudential"

Prudential argues here that discretionary authority is reserved by plan language *"when Prudential determines"* or *"as determined by Prudential,"* making reference to entries such as the following:

> HOW DOES PRUDENTIAL DEFINE DISABILITY?
> You are disabled *when Prudential determines* that:
> you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
> you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

Prudential Long Term Disability Plan for AAAA, p. 10 (emphasis added).

The Second Circuit has found this exact language to be insufficient to confer discretion in Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 109 (2d Cir. 2005).  The Court stated:

> The phrase 'when Prudential determines'…gives Prudential the power to make the

18

> determination, but the list of specific conditions requires that such power be exercised only in accordance with objective standards. To find discretion, we would have to read in language, effectively amending the provision to find disability 'when Prudential determines to its satisfaction that all these conditions are met.' We therefore approve of O'Sullivan and hold that the plan vests no discretion in Prudential.

Id.  In O'Sullivan v. Prudential Ins. Co. of America, 2001 WL 727033, *3 (S.D.N.Y. 2001) the

District Court held:

> The language in the Plan documents that indicates that Prudential 'determines' when all of the conditions for total disability are met, is not a sufficiently clear indicator that discretion has been reserved to the plan administrator or fiduciary, to act as the arbiter for claims of total disability, as contemplated by Kinstler.

And in Kinstler, which is directly on point, the Second Circuit Court stated: "the

administrator's burden to demonstrate insulation from de novo review requires either language

stating that the award of benefits is within the discretion of the plan administrator or language

that is plainly the functional equivalent of such wording." 181 F.3d at 253.

Defendant relies on two cases for support of deferential review: Simone v. Prudential Ins.

Co. of America, 2005 WL 475406 (S.D.N.Y. 2005), issued prior to Nichols. and Mood v.

Prudential, 379 F. Supp. 2d  267 (E.D.N.Y. 2005).  In Nichols, with its clear approval of

O'Sullivan, the Court of Appeals resolved any previous split within the circuit on this issue in

favor of de novo review.  In addition, while Simone did in fact find that the "Prudential

determines" language reserves discretion sufficient to trigger deferential review, Mood, which

had additional language in the summary plan description not found here, only suggested as much

in dicta, stating  "the court need not now decide which standard of review is appropriate" but

opining that the "arbitrary and capricious standard appears, however, to be appropriate." 379 F.

Supp. 2d at 280.

Courts in other circuits have also found the identical Prudential language inadequate to

trigger discretionary review.  See Schwartz v. Prudential Insurance Co., 450 F.3d 697, 698-9 (7th

Cir. 2006) ("At the risk of being flippant, we might ask what part of 'no' doesn't Prudential

understand? . . .We take this opportunity to reaffirm that the language in this plan is not sufficient

to confer discretion on Prudential.") Wood v. Xerox Corp. Long-Term Disability Income Plan,

2006 WL 798969, *2 (N.D.Cal  2006) (an  "allocation of decision-making authority…is not,

without more, a grant of discretionary authority . . ."); Neuman v. Prudential, 367 F. Supp. 2d

969, 976 (E.D.Va. 2005) (discretion may be implied but the intent must be clear); Flores v.

Prudential Ins. Co. of America, 2004 WL 2075448, *4 (N.D.Cal. 2004); Urso v. Prudential, 2004

WL 3355265, *3 (D.N.H. 2003).  As Judge Posner of the Seventh Circuit explained in

Herzberger:

> [T]he mere fact that a plan requires a determination of eligibility . . . by the
> administrator . . . does not give the employee notice that the plan administrator is
> to make a judgment largely insulated from judicial review by reason of being
> discretionary.

Herzberger v. Standard Ins. Co., 205 F.3d 332-33 (7th Cir. 2000).

## B.  Defendant's erroneous reliance upon "Proof Satisfactory to Prudential"

Prudential also argues that language requiring "proof…satisfactory to Prudential" found

in the Booklet under the question "What Information Is Needed as Proof of Your Claim?" ("We

may request that you send proof of continuing disability, satisfactory to Prudential, indicating

that you are under the regular care of a doctor.") and "How Long Will Prudential Continue to

Send You Payments?" ("We will stop sending you payments . . . the date you fail to submit proof

of continuing disability satisfactory to Prudential.") reserves discretion. However, the Second

Circuit has already forcefully stated that:

> the phrase "proof satisfactory to [the decision-maker]" is an inadequate way to
> convey the idea that a plan administrator has discretion. Every plan that is

administered requires submission of proof that will "satisfy" the administrator. No plan provides benefits when the administrator thinks that benefits should not be paid! Thus, saying that proof must be satisfactory "to the administrator" merely states the obvious point that the administrator is the decision-maker, at least in the first instance.

Kinstler, 181 F.3d at 253.  This same language was likewise found ineffective to overcome the

default de novo review in Nichols, 406 F.3d at 108. Other circuits have also found the

"satisfactory to Prudential" language insufficient to reserve discretion.  See Diaz v. Prudential

Ins.. Co., 424 F.3d 635, 639 (7ᵗʰ Cir. 2005); see also Herzberger, 205 F.3d at 332; Flores, 2004

WL 2075448, at *4-7.

In sum plaintiff's claims are entitled to a de novo review by this Court.

## POINT IV

### DISPUTED ISSUES OF MATERIAL FACTS PRECLUDE GRANTING SUMMARY JUDGMENT TO DEFENDANTS ON PLAINTIFF'S CLAIM FOR DISABILITY BENEFITS

**A.  The Standard for Summary Judgment**

A moving party is entitled to summary judgment if  "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

The moving party bears the burden of showing no genuine issue of material fact exists.  Goenaga

v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995) (citation omitted).  The

Court's function in deciding summary judgment motions is not to try issues of fact, but instead to

determine whether there are such issues to try.  See Sutera v. Schering Corp., 73 F.3d 13, 15-16

(2d Cir.1995).  In determining whether genuine issues of material fact exist, the Court must

resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. See

21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

However, the substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." Id. at 248. The nonmoving party therefore must present "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256.

## B. Relevant Burdens of Proof

In deciding motions for summary judgment the Court must bear in mind which party holds the relevant burdens of proof. Here, Ms. Glaser has the initial burden of proving her eligibility for benefits under the plan and her disability. That she met this burden is evidenced by Prudential's own acceptance of her claim and payment for the first 24 months of coverage. However, defendant Prudential terminated benefits after 24 months under the policy provisions limiting coverage for disabilities caused by mental illness and/or based on subjective reporting and/or revising their former conclusion of disability. Under New York law, the insurer seeking to invoke an exclusion provision in order to be released on motion to dismiss from its obligations under the policy has the burden to demonstrate that the "allegations of the complaint place that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322, 325 (1974), quoted in Technicon Elecs. Corp. v. Am. Home Assurance Co., 74 N.Y.2d 66, 73 (1989); see also Employers Ins. of Wausau v. Duplan Corp., 899 F. Supp. 1112, 1119 (S.D.N.Y. 1995). The Second Circuit agrees with this burden shifting: exclusionary clauses are to be strictly construed, and "are given the interpretation most beneficial to the insured." M.H. Lipiner & Son, Inc. v. Hanover Ins. Co., 869 F.2d 685, 687 (2d Cir. 1989). "The rule that

insurance policies are to be construed in favor of the insured is most rigorously applied in construing the meaning of exclusions incorporated into a policy of insurance or provisions seeking to narrow the insurer's liability." Ingersoll Mill. Mach. Co. v. M/V Bodena, 829 F.2d 293, 306 (2d Cir. 1987); see also Farr Man Coffee Inc. v. Chester, 1993 WL 248799, *40 (S.D.N.Y. 1993).

**C.  The De Novo Standard of Review**

In applying the de novo standard, this Court reviews "all aspects of the denial of [the claim], including fact issues," Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 245 (2d Cir. 1999), "to determine for itself whether the claimant should be granted or denied the requested relief." Elsroth v. Consolidated Edison Co. of New York, 10 F. Supp. 2d 427, 434 (S.D.N.Y.1998).  Under this standard, no deference at all is accorded to defendant's interpretation of the Plan but on the contrary, any ambiguities in the Plan are to be construed in plaintiff's favor. Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d at 107. Furthermore, under such de novo review, the district court "is free to evaluate a treating physician's opinion in the context of any factors it consider[s] relevant, such as the length and nature of their relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence." Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 290-91 (2d Cir. 2004) (citation, internal quotation marks and brackets omitted).

**D.  Defendants Have Not Complied with Rule 56**

Federal Rule of Civil Procedure 56(e) states in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  In applying the Rule, district courts in this Circuit have held that "[a]n affidavit

23

made on secondhand information and hearsay is not made on the 'personal knowledge' of the

affiant for purposes of Rule 56(e)." Isaacs v. Mid America Body & Equipment Co., 720 F. Supp.

255, 256 (E.D.N.Y. 1989).  "The principles governing admissibility of evidence do not change on

a motion for summary judgment." Raskin v. The Wyatt Company, 125 F.3d 55, 66 (2d Cir.

1997).

     Defendants here rely entirely on their internal claim file, submitted only with the

attestation that it constitutes their record on the claim.  With the exception of those documents

contained in the file that were annexed to the complaint, and those documents relied on in

Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, plaintiff objects

to the admission of the contents of insurer's file other than for the limited purpose of identifying

the insurer's business record maintained on this claim.  Plaintiff objects particularly to the

admission of opinions and conclusions by defendants' medical and vocational experts contained

in the claim file without the opportunity to investigate and challenge the trustworthiness of the

statements through the use of discovery.[13]

     It is the district court's function to act as the gatekeeper for expert testimony.  Daubert v.

Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993).  Rule 702 of the Federal Rules

of Evidence provides:

> If scientific, technical or specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified by
> knowledge, skill, experience, training, or education may testify thereto in the form
> of an opinion or otherwise, if the testimony is (1) based on sufficient facts or data,
> (2) the product of reliable principles and methods, and (3) the principles and
> methods utilized have been applied reliably to the facts of the case.

---

[13]Such a challenge is anticipated by Federal Rule of Civil Procedure 26(a)(2)(B), which sets forth
several requirements for the admission of expert testimony, none of which has been met by defendants
here.

Fed. R. Evid. 702.  Plaintiff objects to the admission of the testimony or report of defendants'

witnesses and to their opinions concerning Ms. Glaser's disabilities and medical condition for

failing to satisfy one or more of these three requirements.

Fed. R. Evid. Rule 703 provides that expert opinions based on otherwise inadmissible

hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by

experts in the particular field in forming opinions or inferences upon the subject."  The record

proffered here by defendants contains opinion evidence which does not meet this standard.

To the contrary, of the defendants' consulting experts, only one, Dr. Hammer, examined

plaintiff.  Dr. Hammer, a medical doctor, concluded that Ms. Glaser was disabled, that she

suffers from CFS, and that there was objective proof in the file in the form of the Tilt Table

results.  Dr. Hammer apparently did not examine Ms. Glaser for her second illness,

Fibromyalgia.  Further, Dr. Hammer offered the opinion, well beyond his area of expertise, that

Ms. Glaser probably suffered from a mental disability.  Drs. Morehead, MacBride, Scott

(Psychiatrist), and Smith (Psychologist) all appear to be either employees of Prudential or non-

practicing "professional consultants;" none of whom examined Ms. Glaser.[14]  Their credentials

are unknown; but Drs. Morehead, MacBride and Scott have been negatively cited in cases

involving ERISA disability determinations.[15]  It is also unclear what information and documents

---

[14]See Sheehan v. Metropolitan Life Ins. Co., 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005) (finding
that opinions regarding a claimant's mental condition based solely on a record review have little
probative value); and also APA Monitor on Psychology, Vol. 36, No.1, January 2005, "Diagnoses, record
reviews and the new Ethics Code," (Exhibit 4 to Koob Decl.)(explaining Ethical Standard 9.01 restricting
opinions which may be given by psychologists based solely on record reviews). Of Prudential's three
consulting psychologists/psychiatrists only Dr. Van Gorp complies with the APA guideline.

[15]See Mitchell v. Prudential Health Care Plan, 2002 WL 1284947 (D.Del. 2002)(denial of
benefits found arbitrary and capricious because of Prudential Medical Director Dr. Morehead's failure to
provide any support for his medical conclusions); Neumann v. Prudential Ins. Co. of America, 367 F.
Supp. 2d 969 (E.D.Va. 2005) (court found for plan participant, rejecting opinions of  Prudential's "two
in-house physicians, Dr. Marcia Scott, M.D., and Dr. Bob McBride, M.D., neither of whom examined

they reviewed in reaching their opinions.  What is clear is that each of them ignored all evidence supportive of Ms. Glaser's claim in order to reach a conclusion that her disability fit within one of the two limitations on benefits contained in the policy.  Moreover, the doctor's opinions are not consistent with each other.  Dr. Morehead and MacBride find no disability from CFS, contradicting Dr. Hammer's conclusions.  Drs. Scott and Smith discredit Ms. Glaser's evidence of cognition difficulties for reasons that are completely dismissed in the more professional report provided by Prudential's last consultant, Dr. Van Gorp.[16]  Neither Drs. Scott nor Smith's conclusions are supported by the criteria set forth in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSMIV).  Indeed, in order to support its denial determination, Prudential must "cherry pick" among the opinions of its own consultants. The notes of Dr. MacBride's record review show a bias against and a complete lack of understanding of the illnesses underlying Ms. Glaser's disability, CFS and Fibromyalgia.  See Plaintiff's Statements filed pursuant to Rule 56.1 generally.

Similarly, plaintiff objects to the admission of the opinions of Prudential's in-house vocational specialist, who concluded that Ms. Glaser's job duties were "sedentary," based upon an out-dated occupational survey and ignoring the job's requirement of frequent travel to client's offices.[17]  Moreover, Mr. Virgilio ignored or did not consider the description of the job provided

Neumann personally" and who "both recommended revoking Neumann's LTD benefits because, as they saw it, the evidence of her disability was wholly subjective in nature").

[16]Of the reviewing medical consultants, only Drs. Hammer and Van Gorp have credentials which would lend support to a finding of trustworthiness. Dr. Hammer is board certified in Infectious Diseases and Dr. Van Gorp is Chairman of the Department of Psychology at Columbia University. Notably, their reports lend support, if anything, to the claim of disability.

[17]Defendants relied on United States Department of Labor, Employment & Training Admin., II Dictionary of Occupational Titles (DOT), 1013 (4th ed.1991), which at Appendix C contains the following definition of sedentary work: S-Sedentary Work-Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount

by both the employer and Ms. Glaser and as described in the Department of Labor's Standard

Occupational Classification (SOC) system, Occupational Information Network (O*NET), which

superceded the seventy-year old Dictionary of Occupational Titles.[18] (See Plaintiff's Rule 56.1

Statements.) Although plaintiff provided Prudential with the O*NET data, this was ignored by

Mr. Virgilio without reason.

**E. Plaintiff is Entitled to Discovery**

To the extent the Court allows consideration of defendants' opinion evidence, plaintiff

must be permitted to attack such "shaky but admissible" evidence through "vigorous

cross-examination, [and the] presentation of contrary evidence." Daubert, 509 U.S. at 596, citing

Rock v. Arkansas, 483 U.S. 44, 61 (1987). Consideration of defendants' expert reports without

permitting plaintiff an opportunity to employ discovery and cross-examination violates basic due

process principles. An insurance company's reliance on its in-house or paid consultants has none

of the assurances of reliability which justify such consideration by a governmental agency. The

Supreme Court, in Richardson v. Perales, 402 U.S. 389, 402-06 (1971), allowed the admission of

reports by examining physicians as substantial evidence in a Social Security administrative

proceeding because nine separately enumerated protections assured their trustworthiness,

including:  the agency submitting the report was not an advocate or an adversary; the report was

by a practicing physician whose expertise was in the particular field which was the subject of the

---

of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. *Jobs may be defined as Sedentary when walking and standing are required only occasionally* and all other sedentary criteria are met. (emphasis added).

[18]See  http://www.doleta.gov/programs/onet/; see Troy v. UNUM Life Ins. Co. of Am., 2006 WL 846355, *9 (S.D.N.Y. 2006) (insurer's continued use of DOT rather than current O*NET raises concerns regarding fairness of review process).

report; the physician had conducted a full examination and tests in accordance with accepted

medical procedures; the report fully detailed the data considered and the basis for the conclusions

presented; there were no inconsistencies among the various expert reports; and the claimant had

declined the opportunity to cross-examine the physicians with respect to their reports.  None of

these protections apply to the hearsay records offered by defendants here.

The need for discovery is particularly important here where the determination to deny

benefits was made by the same entity responsible for providing the payment for the benefits.

Courts have repeatedly cautioned against a blind acceptance of reports by an insurer's

"independent" consultants.  Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003) ruled

that while an ERISA plan administrator need not give special deference to the opinions of

treating doctors in disability benefit disputes, plan administrators were still required to base their

findings on "reliable evidence." Id. at 834.  The Court in Black & Decker Disability Plan

acknowledged the potential conflict when consultants retained by plans may want to "save their

employers money and to preserve their consulting arrangements." Id. at 832 (internal quotation

marks omitted); see e.g. Calvet v. Firstar Finance, Inc., 409 F.3d 286, 292 (6th Cir. 2005) ("As

the plan administrator, Liberty had a clear incentive to contract with individuals who were

inclined to find in its favor that Calvet was not entitled to continued LTD benefits.")

Consequently, the Sixth Circuit in Cavet found that discovery would provide "a better feel for the

weight to accord this conflict of interest." Id. at 293 n.2.

Besides the need for discovery to obtain information relevant to her challenge of the

reliability and relevance of Prudential's professional consultants, plaintiff also seeks discovery

regarding Prudential's claim handling process, the qualifications and potential bias of the

reviewers, the interpretation and application of the policy provisions limiting benefits to 24

months, the funding of the Plan, and the responses to plaintiff's written requests for Plan

documents and documents relevant to the prosecution of her internal appeals. <u>See</u> Koob Dec. ¶2

and Pff. Ex. 1.  Such discovery is necessary for plaintiff to obtain information which may be

relevant or lead to relevant information concerning her claims for penalties for the failure to

provide documents, her discrediting of Prudential's decision to terminate benefits, and her claim

for attorneys fees.[19]

Notably, during the appeal process Prudential refused to provide plaintiff any guidelines

or claims manuals governing their claims decision-making process, asserting that none were

considered. Complaint ¶22-24. Federal regulations require the disclosure of this information.

<u>See</u> 29 C.F.R. §2560.503-1 (h)(2)(iii); <u>see</u> <u>also</u> <u>Palmiotti v. Metropolitan Life Ins. Co.</u>, 2005 U.S.

Dist. LEXIS 3626 (S.D.N.Y. 2005) (holding the claims manual was required to be made widely

available outside of the insurance company, and efforts to maintain secrecy  were futile).  29

C.F.R. §2560.503-1 (h)(2)(iii) requires that in order to satisfy the statutory requirements to

provide a fair claims procedure, an employee benefit program must provide to a claimant upon

request all documents, records, and other information relevant to the claimant's benefit claim.

Pursuant to 29 C.F.R. § 2560.503-1 (m)(8)(iii), documents are relevant if they demonstrate

"compliance with the administrative processes and safeguards required" under 29 C.F.R.

§2560.503-1 (b)(5).

**F.  Questions of Fact Preclude Summary Judgment for Defendant**

The medical evidence which plaintiff submitted as proof of her claim is extensive and

more than sufficient basis for a reasonable fact finder to conclude that Ms. Glaser is disabled

---

[19]Although not a necessarily required element, the issue of bad faith is relevant to the consideration of an application for attorneys fees in this Circuit. <u>Locher v. Unum Life Ins. Co. of America,</u> 389 F.3d 288, 298-99 (2d Cir. 2004).

under the terms of the policy and that the policy limitations do not apply to her disability. Pff. Response to Def. Rule 56.1 Stmt.; PRU 0459-0481.  These reports are consistent in their conclusions that Ms. Glaser is disabled from *any* level of employment, that the cause of her disability is physical illness, that there is no support for finding her disabled by any mental illness, and that the conclusions reached are based upon objective test results, and objective clinical evaluations conducted in accord with accepted guidelines for the diagnosis and treatment of the disabling illnesses.

Plaintiff's medical reports constitute admissible evidence because they were submitted as part of defendants' moving papers in Exhibit A. See Capobianco v. City of New York, 422 F.3d 47 (2d Cir. 2005).  Thus, defendants have waived any objections to the admissibility of the reports by offering them themselves.  See 10A Charles Alan Wright et al., Federal Practice & Procedure § 2722, at 384-85 (3d ed. 1998).  Moreover, it is unreasonable for defendants to entirely disregard the opinions presented by plaintiff's physicians.  Black & Decker Disability Plan, 538 U.S. at 834 ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").

Thus the finding of non-eligibility for disability benefits made by defendants is opposed by substantial evidence and highly disputed in this litigation, precluding the grant of summary judgment to defendant.  Even if this Court were to apply an arbitrary and capricious standard of review, which it should not, plaintiff has raised sufficient basis for the Court to question the reliability of defendants' findings and the fairness of Prudentials' claim process such that a reasonable trier of fact could find for plaintiff.  At a minimum plaintiff should then be allowed discovery with respect to witness bias and qualifications, procedural defects, and the unreasonableness of Prudential's application of plan terms.

30

<u>POINT V</u>

**PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT**

The standard for summary judgment as above enunciated applies where, as here, the parties file cross-motions for summary judgment.  <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 244 (2d Cir. 2000).  When both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993).  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.  <u>Schwabenbauer v. Board of Education</u>, 667 F.2d 305, 314 (2d Cir. 1981).

**A.  Plaintiff has Met her Burden of Proof of Disability under the Plan**

Plaintiff was first diagnosed with CFS and Fibromyalgia in 1995. Complaint ¶14.  By 2000, her condition had so deteriorated that she was compelled to stop working and file for disability benefits.  <u>Id</u>. ¶15.

The documentation submitted by plaintiff as medical evidence of her disability is consistent, unequivocal and based on physical examinations by professionals qualified in the area of medicine which is the subject of their opinions who followed accepted medical guidelines in their evaluation of Ms. Glaser and her medical condition and prognosis.  Indeed, even Ms. Glaser's employer recognized her declining medical condition at the beginning of 2000 and agreed to reduce her hours on the advice of her physician.  Ms. Glaser has consistently asserted that her disability was caused by her physical illnesses. PRU 0558.  A component of her disability was a decrease in cognitive functions, a frequent failing which accompanies the diagnoses of CFS and Fibromyalgia.  Although she sought counseling for depression, she

31

attributed these feelings to her loss of abilities, decrease in functioning, fears of dependence and disagreements with a sister. Neither she nor any of her doctors ever claimed or asserted that her disability arose from depression. Indeed, Prudential, after an initial denial, agreed with Ms. Glaser that she was disabled. Prudential's decision was based upon the opinion of Dr. Hammer, a medical doctor who examined Ms. Glaser at the request of Prudential. He found her tilt table test results impressive and supportive evidence of her CFS. Notably, Dr. Hammer apparently ignored and did not address her complaints sounding in Fibromyalgia.[20] Ms. Glaser was also found totally disabled under the Social Security Act. PRU 0380.[21]

**B.  Defendant cannot meet its burden of proving either policy limitation**

As plaintiff argued above in Point IV, defendant has the burden of proving that Ms. Glaser's claim falls under the plan language which places a limitation on the coverage generally offered under the plan. Here, obviously attempting to "cover all possible bases" which might justify limiting their exposure to 24 months of benefits, defendant claimed that one or both of the policy's limitations applied, and in their final denial, also claimed that Ms. Glaser could return to work, which it incorrectly identified as sedentary. Not one basis relied upon Prudential has merit.

**C.  Plaintiff's claim is not limited by the subjective reporting limitation**

Specifically, the subjective reporting limitation reads:

Disabilities due to a sickness or injury which, as determined by Prudential, are

---

[20]Fibromyalgia (a/k/a FMS) is a disorder defined by the American College of Rheumatology (ACR); the appropriate examiner/reviewer for FMS is a rheumatologist.

[21]A claimant is disabled within the meaning of the Act only if his impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); see 20 C.F.R. §§ 404.1520.

primarily based on **self-reported symptoms** have a limited pay period during your lifetime (of 24 months).

\* \* \*

**Self-reported symptoms** mean the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

The Plan, PRU 0103 (emphasis in original).  By the plan's own definition Ms. Glaser's self-reported symptoms do not meet the definition because they have been verified through tests, procedures and clinical examinations standardly accepted in the practice of medicine. Besides her doctors' clinical evaluations, repeated many times over a lengthy period of time, plaintiff's medical records contain objective findings from tests and procedures which verify her doctor's conclusions and explain the basis of her symptoms. These findings are standardly accepted as being consistent to her diagnosed physical illnesses, and none lend any support to a finding of mental illness disability:  a) tilt table testing;  b) trigger point response for at least eleven of eighteen know trigger points; d) elevated Epstein Barr virus titer; c) prior exposure to HHV6;  d) low blood volume; e) abnormal supine to upright Plasma catacholamine levels; f) abnormal cardiopulmonary testing; g) abnormal blood sugars indicative of insulin resistence prediabetic state; h) immunological studies showing abnormal IgG1level consistent with poor humoral immunity and elevated cardiac CRP;  i) abnormal results from  sleep study; and j) documented cognitive difficulties.  See Pff. Rule 56.1 Statement;  National Institute of Health guidelines for CFS and fibromyalgia at http://www.nlm.nih.gov/medlineplus/ency and Pff. Ex. 5 and 6.

Prudential has refused to disclose any training materials or established guidelines which might explain its interpretation and ensure a consistent implementation of the policy limitations. However, in another ERISA disability case involving the issue of objective evidence Prudential

submitted as part of its "administrative record," i.e. claim file, a memorandum attaching "the

process Prudential follows to review claims." <u>Tracy v. Pharmacia,</u> Case No. 04-73043 (E.D.

Mich.), Document 23-1, pages 13-17, at Koob Dec., Exhibit 3.  In relevant part, the attached

"Prudential Disability Claim Management Process" states:

> *Examples of objective medical documentation may include, but not be limited
> to, the following information:
> ?        Laboratory results (Bloodwork)
> ?        Objective Test results e.g. X-ray and/or MRI results
> ?        Physician Office Notes
> ?        Physical Therapist? Progress and/or Discharge Summary Notes
> ?        Physician? Medical/Physical Examination Findings
> ?        Hospital Records

Here Ms. Glaser submitted all of the above but for hospital records. Given plaintiff's extensive

medical record and submitted evidence, the plain meaning of the policy provision, Prudential's

burden and its own explanation of objective medical evidence, a factfinder could not reasonably

find that this claim falls within the borders of this limitation.

**D.  There is no reliable evidence to support the application of the mental illness limitation**

The subject policy also provides a 24 month limited pay period for disabilities which it

determines "are due in whole or part to ***mental illness***" (emphasis is original).  "Mental Illness"

is defined as "a psychiatric or psychological condition regardless of cause."  Here, plaintiff's

treating and consulting doctors have specifically opined that Ms. Glaser's disability is due wholly

to her physical illness and not to any psychological condition.  It is defendants' burden to prove

that this policy limitation applied to Ms. Glaser's disability. Thus, plaintiff is entitled to summary

judgment if she can show an absence of any "concrete evidence from which a reasonable juror

could return a verdict in [defendants'] favor." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256.

Here defendant Prudential determined that Ms. Glaser was disabled due to an unspecific

mental illness based on hearsay laden reports rendered by unqualified medical reviewers and without the benefit of any psychiatric or psychological examination. More specifically, Dr. Hammer, a medical doctor certified in infectious diseases, who was retained allegedly to examine Ms. Glaser with respect to her CFS, gratuitously added an impression that Ms. Glaser's disability may be caused by her depression.  PRU 0204.  As there is no indication that Dr. Hammer conducted a psychological examination nor that he is qualified to make such determination, the remark does not meet the standards for opinion evidence under Daubert and Fed. R. Evid. 702 and should be disregarded and afforded no weight.  The remaining opinions on which Prudential relies were rendered by doctors or psychologists who did not see or examine plaintiffs.  Such opinions likewise to not meet evidentiary standards and should be disregarded.  See Sheehan v. Metropolitan Life Ins. Co., 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005) wherein the District Court gave no credence to opinions concerning mental illness rendered upon only a record review, citing a compilation of cases with the similar ruling.

In Westphal v. Eastman Kodak Co., 2006 WL 1720380 (W.D.N.Y. 2006) the district court found the opinions rendered by non-treating, non-examining psychologists or psychiatrists to be unreliable, observing:

> The psychiatric treating model requires that a doctor treating a psychiatric patient conduct an interview, and [a] medical examination of the patient. Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient. See The Merck Manual, 15 Edition, Chapter 12, Psychiatric Disorders, page 1456. Because of the subjective nature of the discipline, the examining psychiatrist, must acquire a mastery of objective observation together with knowledge and skills of participant, subjective and self observation. Id.
>
> "The psychiatrist's primary assessment tool is the direct face-to-face interview of the patient: evaluations based solely on review of records ⋯ are inherently

limited." See American Psychiatric Association Publication "IV. Evaluation Process" http://www.psych.org/psych-proct/treat/pg/pa-adult-4.cfm. (Emphasis added)

Moreover, "··· it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement." American Psychiatric Association, "The Principles of Medical Ethics" Section 7, Paragraph 3, 2006 Edition.

Westphal, 2006 WL 1720380 at *4.[22] See also Pff. Ex. 4 regarding a similar ethical guideline for psychologists.

In sum, defendant has not met its burden of proof sufficient to justify the application of thhe policy limitations, nor is there any evidence that Ms. Glaser's disabilities have waned or her condition has improved such that she could now perform the duties of her own occupation, which by all reliable evidence requires a much higher level of activity than "sedentary," as well as cognitive acuity.

## POINT VI

### SUMMARY JUDGMENT SHOULD BE GRANTED PLAINTIFF ON HER CLAIM OF UNDERPAYMENT

Two months prior to completely stopping work due to disability Ms. Glaser, on the advice of her physician, requested a reduced work week, which the employer granted. Thus, during this period immediately preceding Ms. Glaser's date of last employment, she was working four days a week and being paid eighty percent (80%) of the annual salary she had been earning prior to her change in her work week. Defendant Prudential calculated Ms. Glaser's disability income based on the reduced salary figure. Ms. Glaser complained of the calculation, to no avail. Now both parties move for summary judgment on plaintiff's claim of an underpayment of the

---

[22]The American Psychological Association has a similar ethical restriction on psychologist rendering opinions based solely on a paper review. See Koob Dec., Ex.4.

benefits which were paid Ms. Glaser during the first 24 months of coverage. Defendants argue that their calculation follows the plain meaning of the plan.[23] (Def. Mem 23-24.)

Although this suit arises under ERISA, the federal common law that has been developed in ERISA case continues to be largely informed by state law principles.  Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 107 (2d Cir. 1991). Courts reviewing the terms of ERISA plans should apply "familiar rules of contract interpretation" reading the plan as a whole, and giving priority to the plain meaning of its terms.  Lifson v. INA Life Ins. Co. of New York, 333 F.3d 349, 353 (2d Cir. 2003).  Terms should be accorded their ordinary and popular meanings, as they would be understood by a person of average experience and intelligence. Id. at 353-54 (citations omitted).  When making this determination, the court should be guided by the reasonable expectations of the insured. See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 269 (4th Cir. 2002); Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556-57 (6th Cir.1998) (en banc); Saltarelli v. Bob Baker Group Med. Trust, 35 F.3d 382, 386 (9th Cir.1994). ERISA plan "coverage [is intended to] . . . be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs."  1 ERISA Leg. History 604, S. Rep No. 93-127, 93d Cong., 1st Sess. 18 (1973), reprinted in 1974 US Code Cong. & Admin. News 4838, 4854.

Where both parties contend that the policy language is clear and unambiguous, yet urge opposing interpretations of it, the court should adopt the interpretation "which gives meaning to every provision of [the policy]. A construction which renders a clause meaningless should be avoided." Trump v. Refco Properties, Inc., 194 A.D.2d 70 (1st Dep't 1993) (citation omitted),

---

[23]Defendants do not rest their argument on this issue on any claim of discretionary authority to interpret the plan.

leave to appeal denied, 83 N.Y.2d 754 (1994).

Should the terms present any ambiguities, the ambiguities are to be construed against the drafter and in favor of the beneficiary. Masella, 936 F.2d at 107; I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Engs. Council Ins. Trust Fund, 136 F.3d 114, 121 (2d Cir.1998) (the rule of contra proferentem applies to ERISA plans). Indeed, the interpretation promoted by the insurer must be "the only construction which may fairly be placed on [the words]." Vargas v. Ins. Co. of N. Am., 651 F.2d 838, 840 (2d Cir.1981) (internal quotation and citation omitted); accord Seaboard Surety Co. v. The Gillette Co., 64 N.Y.2d 304 (1984); Sincoff v. Liberty Mut. Fire Ins. Co., 11 N.Y.2d 386 (1962).

Here, defendants claim that it properly paid plaintiff 60% of her monthly earnings, because the Plan defines monthly earnings as "gross monthly income . . . in effect just prior to your date of disability." (Def. Mem. 24.) By defendants' logic, the "date of disability" referred to in this language is the same as the date that plaintiff became eligible for long term disability benefits. This reading, however, is unsupported by both the language of the Plan and by any reasoned policy. A much more logical reading is that plaintiff became disabled, for the purpose of calculating her monthly benefit, when she reduced her work week from 5 to 4 days because of her disability. The Plan itself states that a beneficiary is considered disabled when she has a 20% or more loss of earnings due to sickness or injury, as plaintiff had here before she applied for LTD benefits. (PRU 0083.)

Moreover, the Plan provides for the payment of disability benefits for those beneficiaries who continue to work while disabled. (PRU 0085.) This provision of the Plan makes clear that the disability benefit is based on the "percentage of income you are losing due to your disability." (Id.) Under defendants' theory, if a beneficiary worked three days a week prior to ceasing work

38

entirely, her benefits while working three days a week would be based on her full-time salary, while her benefits after stopping work entirely would be based on her three-day a week salary. This results in an absurd outcome, and creates perverse incentives. If defendants' interpretation of the Plan were correct, beneficiaries might forego attempts to work part-time while disabled, because if they subsequently were completely unable to work due to disability, they would receive less benefits because of their initial attempt to work part-time. This runs contrary to the purpose of the Plan and ERISA's purpose of maximizing protection and benefits for workers with disabilities.

When considering similar arguments by ERISA defendants, courts have generally rejected the argument that entitlement to benefits should be reduced because an employee's disability caused her to reduce work hours or change positions prior to requesting LTD benefits. Campbell v. Unum Life Ins. Co., 2004 WL 1497712, *14 (E.D.La. 2004) (predicting "absurd consequences" if employee were not considered to be actively employed simply because her position is "temporarily modified due to illness"); Klein v. National Life of Vermont, 7 F. Supp. 2d 223 (E.D.N.Y. 1998) (work performed by disability claimants after the onset of their disabilities is not the proper measure of their "occupation"); George v. Unum Life Ins. Co., 1996 WL 701018 (S.D.N.Y. 1996) (same). Here, defendants' interpretation of the Plan is contrary to any reasonable interpretations of its terms and to the purposes of ERISA. It should accordingly be rejected and summary judgment should be granted to plaintiff for underpayment of benefits.

## **CONCLUSION**

For the reasons set forth herein, this Court should deny defendants' motions to dismiss and for summary judgment, and grant plaintiff's motion for summary judgment, and grant plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Elizabeth L. Koob*

Elizabeth L. Koob [EK0248]
**KOOB & MAGOOLAGHAN**
<u>Attorneys for Plaintiff</u>
19 Fulton Street, Suite 408
New York, New York 10038
212-406-3095

Dated: September 29, 2006
        (as corrected 10/2/06)